UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JAY COHEN.                                                          Case No.: 16-1776
                              Plaintiff,              :

-against-                                            :

                                                     :              **COMPLAINT AND
                                                                    JURY DEMAND**

THE METROPOLITAN LIFE INSURANCE         :
COMPANY,  NORTH SHORE FINANCIAL         :
GROUP and MICHAEL P. TUCCILLO,
an Individual.                                         :

                              Defendants.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

COMES NOW Plaintiff, JAY COHEN ("Cohen"), by and through his counsel, The Law Offices of Neal Brickman, located at 420 Lexington Avenue, Suite 2440, New York, New York 10170, and as and for his complaint against defendants, METROPOLITAN LIFE INSURANCE COMPANY  (hereinafter, "Metlife"), NORTH SHORE FINANCIAL GROUP, (hereinafter, "North Shore "), and MICHAEL TUCCILLO (hereinafter "Tuccillo"), states and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for employment discrimination, including hostile work environment and constructive discharge. Plaintiff seeks compensatory and punitive damages and other relief arising from Defendants' illegal discriminatory and disparate treatment of Plaintiff, as a result of his religion and age, under the New York State, and Federal anti-discrimination laws. This lawsuit also alleges a tortious interference with business relations claim under the common law of the state of New York.

## PARTIES

2.       Plaintiff is an individual citizen of the United States, and a 56 year old Jewish male, residing in Melville, New York.

3.       Upon information and belief, Metlife is a global provider of insurance, annuities and employee benefit programs with its headquarters and principal offices located at 200 Park Avenue New York, NY 10166.

4.       Upon information and belief, North Shore Financial Group (hereinafter "North Shore Financial"), is a Metlife company with offices at 2929 Express Drive North, Suite 200, Hauppauge, NY 11749.

5.       Upon information and belief, at all times relevant hereto, Defendant Tuccillo is an individual residing in Suffolk County New York. Upon information and belief, at all relevant times, Tuccillo was the Managing Partner of North Shore Financial who had supervisory authority over Cohen and was part of Metlife's senior management. In that capacity, Tuccillo qualifies as an "employer" under New York Executive Law § 296.

## JURISDICTION AND VENUE

6.       Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391 because the defendant entity resides, for purposes of venue pursuant to 28 U.S.C. § 1391(b), in this judicial district.

7.       This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 in that the claims herein arise under the laws of the United States. The Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over related claims brought under the New York Executive Law and under New York State common law.

## FACTUAL BACKGROUND

8.     This is an action for compensatory and punitive damages stemming from Defendants' constructive discharge of Cohen because of his age and religion, in contravention of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621 et, seq.; and religion in contravention of Title VII ("Title VII") of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2, *et. seq.,* and the New York State Human Rights Law, NY Executive Law §296 et. seq., as well as under state law alleging claims for employment discrimination, and constructive discharge. Plaintiff seeks compensatory and punitive damages and other relief arising from Defendants' illegal discriminatory and disparate treatment of Plaintiff, as a result of his religion and age, under New York State and Federal laws. This lawsuit also alleges a tortious interference with business relations claim under the common law of the state of New York.

9.     Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission on August 3, 2015.

10.     The EEOC issued a Notice of Right to Sue Letter on December 10, 2015, and the Complaint is filed within 90 days thereof.

11.     In or about 1980, Plaintiff began working as a Metlife registered sales representative in a Long Island office.

12.     Mr. Cohen had an impressive sales record for over 34 years. In 1997 Mr. Cohen was MetLife's 5th most productive sales representative in the country. In 2007 he was the 9th most productive representative in the country.

13.     Cohen's father, George Cohen, grandfather and great-grandfather had all worked at MetLife.  After his father's semi- retirement in 1995, Cohen helped to service many of his father's clients.

3

14.     In 2008, Cohen's father fully resigned from MetLife after an incident involving a doctored illustration which caused a problem with a client. Although Cohen had nothing to do with this and was fully exonerated, he was ostracized by Tuccillo, his new manager going forward.

15.     In 2008, Cohen's manager, Jay Goodman, was fired without cause, and was replaced by Mike Tuccillo who became Cohen's direct supervisor and manager.

16.     Tuccillo never gave Cohen the support from the back office he had previously received from Goodman, and Cohen was denied any new leads to generate new business. These "new" leads were funneled by Tuccillo to younger, sales representatives with Italian backgrounds. All of Cohen's business suggestions were ignored. Tuccillo advised the new younger sales representatives to take any leads generated by Cohen and not return them to him which was contrary to established practice. Cohen was not given any core competitive products to market to his clients in a further effort to marginalize his employment.

17.     Cohen was made to feel very unwelcome when the office was moved to a new space. All of the younger, Italian and non-Jewish representatives were put together and Cohen was isolated away from everyone in a desk at the back of the office.

18.     Unlike his former manager, Tuccillo promoted a practice where younger representatives who were given leads by Cohen would run with them and never give them back-a practice designed to push out older representatives like Cohen whose compensation packages were more costly. Tuccillo's discriminatory treatment of Cohen directly hindered his ability to participate in client development opportunities which were diverted to younger, non-Jewish representatives.

4

19.     There was a lot of anti -Semitism in the office. Tuccillo often made disparaging remarks about Cohen being Jewish, and referred to Cohen, on several occasions, as a "dirty Jew bastard".

20.     Tuccillo on several occasions invited all the other representatives out to dinner, where business relationships were nurtured, but did not invite Cohen to attend these dinners. These dinners represented important career opportunities for Cohen. Upon information and belief, because of his age and religion, Cohen was the only representative not invited to these dinners.

21.     Tuccillo's actions were deliberate and made with the specific intent of degrading and humiliating Cohen so that he would resign from his employment.  Tuccillo's actions were constant and pervasive and his biased treatment made it virtually impossible for Cohen to do his job effectively.

22.     Cohen complained about the discriminatory treatment to managers Richard Linden and Sam Maruca who advised him to "kiss the ring" of Tuccillo -- in other words to take the treatment to keep his job.

23.     A reasonable person in Cohen's circumstances would be compelled to resign as defendants marginalized, isolated and otherwise discriminated against him.

24.     As a result of Tuccillo's unfair and discriminatory treatment, Cohen's business, and compensation, began to suffer. In 2009, his sales numbers fell off $300,000. From 2010-2014, his sales hovered around $150,000, which was a far cry from his earlier sales, prior to Tuccillo's unfair treatment of him.

25.     Tuccillo was responsible for the direct supervision of Cohen, but also specifically effected or directed the discriminatory actions that negatively impacted his career, and the disparate treatment of Cohen vis-à-vis younger similarly situated employees.

26.     In or about 2012 Metlife instituted formal "teams' which were based on sales numbers. Because his business had fallen off dramatically due to Tuccillo's discriminatory acts, he did not have the level of core business needed to lead a team, which caused him to lose opportunities given to other agents to retain and continue to build his business to the level needed to preserve his retirement benefits.

27.     As of July 1, 2013, Cohen was eligible to retire-- but under MetLife's rules, and due to the ongoing discriminatory treatment by Tuccillo, he was unable to meet the minimum sales numbers which he needed to retire with the pension he had earned, and to keep his Broker Dealer with MetLife.

28.     In 2013, MetLife changed the retirement rules. Tuccillo and Eileen Belmonte met with the other non-Jewish sales agents and advised them that under the new MetLife rules they would be better off retiring, but failed to give Cohen the same notice and opportunity. But for Tuccillo's discriminatory animus toward Cohen he would have been advised of his rights under MetLife's new rules.

29.     Because Tuccillo did not give Cohen the advice and support that he gave to the other agents, Cohen lost his retirement contract. As a result, unlike the other agents,  when Cohen was forced to retire, he was unable to continue to work and accrue his pension until age 65, was unable to keep his Broker Dealer,  and  he was denied the pension and commissions,  to which he was entitled.

6

30.     Upon information and belief, Cohen's job functions and responsibilities were reassigned to younger employees and/or filled by younger employees hired by Defendants after his constructive discharge.

31.     The common practice once an agent retires, is to continue to pay a percentage commission to him for his "book of business" including a "Local Add-On." Cohen was denied the Local Add-On, unlike other representatives, as a result of the discriminatory treatment based on his age and religion as set forth herein.

## COUNT I
## DISCRIMINATION ON THE BASIS OF
## RELIGION IN VIOLATION OF ACT, 42 U.S.C. §2000e *et seq.*
## (As Against Metlife and North Shore)
## il

32.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "31" of this complaint, with the same force and effect as is fully set forth herein.

33.     Defendants discriminated against Mr. Cohen and treated him differently than other similarly situated employees in like circumstances, based upon the fact that he is Jewish.

34.     Defendants' acted willfully, knowingly, and intentionally and were motivated by Mr. Cohen's and religion.

35.     Defendants' actions as aforesaid constituted violations of Title 42 § 2000 (e) et seq., when they discriminated against him on the basis of religion.

36.     As a result of the Defendants' discriminatory acts, Plaintiff has suffered and continues to suffer has suffered and continues to suffer the loss of tangible job benefits, irreparable injury, emotional distress, and other compensable damages.

WHEREFORE, plaintiff respectfully demands judgment as against Defendant Metlife and North Shore in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00) compensatory damages; punitive damages in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000); the costs and disbursements of this action, including reasonable attorneys' fees, all relevant interest, and any such other relief to Plaintiff as this Court deems just and proper.

## COUNT II
### AGE DISCRIMINATION IN VIOLATION OF AGE
### DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 621 *et seq*
### (As Against Metlife and North Shore )

37.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "36" of this complaint, with the same force and effect as is fully set forth herein.

38.     The Age Discrimination Act prohibits discrimination by employers based on an individual's age.

39.     Plaintiff was over the age of forty when his annual compensation was drastically reduced.

40.     Similarly situated younger employees did not experience a reduction comparable to Plaintiff.

41.     Plaintiff's age was an impermissible factor in the decision to decrease his compensation.

42.     Individual defendant Tuccillo personally participated in the discrimination and had the power to make personnel decisions, in violation of the ADEA.

43.     By the aforesaid acts, the defendant Metlife breached the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

44.     As a result of the Defendants' discriminatory acts, Plaintiff has suffered and continues to suffer has suffered and continues to suffer the loss of tangible job benefits, irreparable injury, emotional distress, and other compensable damages.

45.     WHEREFORE, plaintiff respectfully demands judgment as against Defendant Metlife and North Shore  in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00) compensatory damages; liquidated damages in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000); the costs and disbursements of this action, including reasonable attorneys' fees, all relevant interest, and any such other relief to Plaintiff as this Court deems just and proper.

## COUNT III
## EMPLOYMENT DISCRIMINATION
## ON THE BASIS OF AGE AND RELIGION IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW §296(1) ("Human Rights Law")
### (As Against All Defendants)

46.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "45" of this complaint, with the same force and effect as is fully set forth herein.

47.     The New York State Human Rights Law prohibits discrimination based upon an individual's age or religion by employers.

48.     Metlife employs four or more person and is thus an "employer" covered by the Human Rights Law.

49.     As fully stated above, Plaintiff had a thriving career and earned substantial commissions prior to the time Tuccillo became his new manager.

50.     Tuccillo is personally liable for the constructive termination of Cohen in that he qualifies as an "employer" for the purposes of individual liability under the New York Human Rights Law and by virtue of his ability to affect the terms and conditions of Tuccillo's employment.

51.     Upon information and belief, Cohen was treated differently from similarly situated younger, non-Jewish employees in like circumstances.

52.     The acts and events described above constitute unlawful discrimination and disparate treatment based on age and religion in direct contravention of § 296 of the New York Executive Law.

53.     As a direct result of the illegal and improper discriminatory termination of Cohen by Defendants, he has suffered injury and harm in the form of lost compensation and benefits and emotional damage.

54.     Defendants' conduct was intentional, knowing and willful and as a result warrants an assessment of punitive damages.

WHEREFORE, plaintiff respectfully demands judgment as against defendants in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00) compensatory damages; punitive damages in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000); the costs and disbursements of

this action, including reasonable attorneys' fees, all relevant interest, and any such other relief to Plaintiff as this Court deems just and proper.

## COUNT IV
## CONSTRUCTIVE DISCHARGE IN VIOLATION
## OF NEW YORK EXECUTIVE LAW § 296
## (As Against All Defendants)

55.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "54" of this complaint, with the same force and effect as is fully set forth herein.

56.     Defendants' actions as detailed herein created an intolerable work environment.

57.     A reasonable person in Cohen's circumstances would be compelled to resign as defendants marginalized, isolated and otherwise discriminated against him to the point where Cohen was unable to effectively perform his job.

58.     Defendant's actions were deliberate and made with the specific intent of degrading and humiliating Cohen so that he would resign from his employment.  Defendants' actions were constant and pervasive and made it impossible for Cohen to properly perform the duties of his position.

59.     As a result of this constructive discharge, Plaintiff has suffered and continues to suffer the loss of tangible job benefits, irreparable injury, emotional distress, and other compensable damages.

WHEREFORE, plaintiff respectfully demands judgment as against defendants in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00) compensatory damages; punitive damages in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000); the costs and disbursements of

11

this action, including reasonable attorneys' fees, all relevant interest, and any such other relief to Plaintiff as this Court deems just and proper.

**COUNT V**

**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**
**(As Against All Defendants)**

60.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "59" of this complaint, with the same force and effect as is fully set forth herein.

61.     In or about January of 2015 an existing client informed Cohen that an agent at North Shore had badmouthed Cohen in an attempt to poach an existing deal that the client had with Cohen.

62.     Upon information and belief, the agent knew of the existing deal and told the client that Cohen would "not do right" by him and that he should give the agent the deal instead. The agent by his words and actions intentionally disparaged Cohen's business ability and acumen in order to steal his account and deprive Cohen of his commissions.

63.     Cohen lost the deal and the commissions that he should have had absent the tortious interference.

64.     As a direct and proximate result of this conduct, Plaintiff has suffered economic injury and irreparable harm, including, but not limited to the loss of commissions and damage to his professional reputation.

65.     Defendants' conduct was intentional, malicious, and contrary to public policy, and warrants an assessment of punitive damages.

WHEREFORE, plaintiff is entitled to be placed in the position he would have occupied but for defendants' discriminatory treatment of him, making him whole for all earnings

and other benefits he would have received but for defendants' discriminatory treatment, including, but not limited to wages, pension, and other lost benefits. Plaintiff demands judgment as against defendants in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00) compensatory damages; punitive damages in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000); the costs and disbursements of this action, including reasonable attorneys' fees, all relevant interest, and any such other relief to Plaintiff as this Court deems just and proper.

## JURY DEMAND

66.     Plaintiff hereby demands a trial by jury of the facts and allegations herein.

Dated: New York, New York
       March 8, 2016

                              Respectfully submitted,


                    THE LAW OFFICES OF NEAL BRICKMAN, P.C.

                    By:   _____
                          Neal Brickman (NB 0874)
                          Attorneys for Plaintiff Jay Cohen
                          420 Lexington Avenue, Suite 2440
                          New York, New York 10170
                          Tel: (212) 986-6840
                          Fax: (212) 996-7691
                          neal@brickmanlaw.com